UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DAWN D. LAGERKVIST, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|      v. | ) CASE NO.: 1:22-cv-201-HAB-SLC |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
|    Defendant, | ) |
| | ) |
| | ) |

**OPINION AND ORDER**

Plaintiff, Dawn D. Lagerkvist ("Lagerkvist"), was assessed a penalty by the Internal Revenue Service for unpaid employment taxes by her business in the 2012 tax year. To quote Benjamin Franklin, "in this world, nothing is certain except death and taxes." Plaintiff does not dispute that the penalty assessed here was accurate. That much is certain. Rather, Lagerkvist sued the Government on the grounds that she is entitled to a refund because the IRS's assessment was untimely. (ECF No. 1). The Government says not so and moves for summary judgment. (ECF No. 28). It contends that Lagerkvist never filed a return that would trigger the three-year statute of limitation for the assessment under 26 U.S.C. § 6501(a). The Government's motion is fully brief (ECF Nos. 28, 30, 33, 35), and ripe for ruling.

    **I.**    **Factual Background**

At all relevant times, Lagerkvist was the sole shareholder of Thrive Lagerkvist Medical Services, LLC ("Thrive"), a medical provider located in Marion, Indiana. (ECF No. 34, ¶¶ 1-2). In 2011, somebody on Thrive's behalf filed Form SS-4 with the IRS to obtain an Employer Identification Number ("EIN"). (*Id.* at ¶ 3). A Form SS-4 allows an employer to choose how it

1

wishes to report its employment tax liability to the IRS. Thrive's Form SS-4 specified that it would file a Form 944 rather than filing quarterly Forms 941 to report its employment tax liability. (*Id.* at ¶ 4).

Despite electing to use Form 944, it appears that Thrive attempted to file a properly signed Form 941 for the first quarter of 2012. In response, the IRS sent a letter to Thrive stating that it "received a Form 941, Employer's QUARTERLY Federal Tax Return, for" the March 31, 2012, tax period and directing Thrive to "file the annual Form 944 instead." (*Id.* at ¶ 5). The letter—dated June 29, 2012—also states that "[a] notice was sent to you in February informing you that your filing requirement had been changed to Form 944" and "[s]ince you are required to file Form 944, Employer's Annual Federal Tax Return, for calendar year 2012, we will not process the Form 941." (*Id.* at ¶¶ 6-7). Thrive did not file any correction or revision to its Form SS-4 regarding its employment tax filing status. (*Id.* at ¶ 8).

Thrive did not file any Form 944 for the 2012 tax year. (*Id.* at ¶ 10). Although the IRS "received" (and expressly rejected) a Form 941 for the first quarter of 2012, there is no record that any Form 941 was actually filed by Thrive. (*Id.*). Indeed, the IRS provided Certifications of Lack of Record regarding the filing of Form 941 by Thrive for each quarter in 2012. (*Id.*). Lagerkvist admits that she does not have any certified mailing receipts showing when she submitted any Form 941 or Form 944 on Thrive's behalf relating to the 2012 tax year. (*Id.* at ¶ 17). Yet Thrive did timely file a Form 1120S in 2012 which included a schedule detailing an increase in payroll liabilities. (ECF No 36, ¶¶ 23-24). And Thrive filed Form W-3 with attached Form W-2s in 2012 which included information on wages and withholdings for all Thrive employees. (*Id.* at ¶¶ 25-26).

In May 2014, the IRS opened a substitute for return investigation of Thrive's Form 944

2

employment tax liability for the 2012 tax year. (ECF No. 34, ¶ 12). The IRS then assessed zero on Thrive's tax account for 2012 because no return had been filed. (*Id.*). At the conclusion of its examination, the IRS assessed $137,639.55 (exclusive of penalties and interest) against Thrive in unpaid withholding taxes on November 16, 2015. (*Id.* at ¶ 13).

The IRS then proposed an assessment of a Trust Fund Recovery Penalty ("TFRP") against Lagerkvist on July 25, 2016, for Thrive's unpaid taxes. (*Id.* at ¶ 20). Lagerkvist timely appealed the proposed TRFP assessment and her appeal was denied on May 18, 2017. (*Id.*). Five days later, the IRS assessed a TRFP against Lagerkvist in the amount of $93,594.22 for the unpaid portion of Thrive's 2012 employment tax liabilities. (*Id.* at ¶ 14).

Lagerkvist admits that $93,594.22 was the correct amount for the TFRP assessment, and that she had the duty to perform or the power to direct the act of collecting, accounting for, or paying over trust fund taxes, on Thrive's behalf for the 2012 tax year. (*Id.* at ¶¶ 15-16). Neither Lagerkvist nor the Government have located definitive proof of any executed Forms 941 submitted by Thrive in 2012 except that the parties have stipulated that the Court should assume that the first quarter Form 941 received by the IRS in 2012 was executed. (*Id.* at ¶¶ 18-19). But there is no admissible evidence of any returns for the next three quarters being received by the IRS—executed or not.

Lagerkvist sued the Government requesting a refund of $93,594.22 which she paid for the TFRP. (ECF No. 1). She contends that the "filing" of Thrive's first quarter Form 941 in 2012, partnered with other documents, constitutes the filing of a "return" for the purposes of when the statute of limitations began to run. (*Id.* at ¶ 15). Her position is that "[a]ny assessment for the tax year 2012 should have been made by April 15, 2016." (*Id.* at ¶ 16). Lagerkvist believes that the IRS's May 2017 TRFP assessment was untimely, and that she is entitled to a refund.

The Government filed the instant motion for summary judgment (ECF No. 28) alleging that it timely assessed Lagerkvist's penalty and no refund is warranted.

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making its determination a court must construe all facts "in a light most favorable to the non-moving party" and "draw all legitimate inferences in favor of that party." *Williams v. Norfolk S. Corp.*, 322 F. Supp. 3d 896, 899 (N.D. Ind. 2018) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

The non-movant "need only produce evidence sufficient to *potentially* persuade *any* reasonable jury." *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 648 (7th Cir. 2016) (citing *Anderson*, 477 U.S. at 248) (emphasis in original). "A dispute about a material fact is genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rose v. Birch Tree Holdings, LLC*, No. 2:18 CV 197, 2022 WL 3656986, at *2 (N.D. Ind. Aug. 25, 2022) (quoting *Anderson*, 477 U.S. at 248).

"At the end of the day, a court's role 'is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.'" *Ball Corp. v. Air Tech of Mi., Inc.*, 2022 WL 1801120, at *1 (N.D. Ind. June 2, 2022) (quoting *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994).

## III. The Tax Code

Tax law is no doubt a complex and nuanced area, so a breakdown of some its relevant components is necessary here. The Internal Revenue Code requires that employers withhold social

4

security and income taxes from wages paid to employees. 26 U.S.C §§ 3102, 3402(a). These withholdings are to be held in trust and are not to be used for the employer's business expenses. If these amounts are not paid to the government, it still is required to credit the employer with having collected the withheld amounts. Therefore, 26 U.S.C. § 6672 permits the government to recover the amounts from the responsible individuals:

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). Here, there is no dispute that Lagerkvist was a "responsible person" that "willfully" failed to pay the trust fund taxes to the Government. *See, e.g.*, *Cline v. United States*, 997 F.2d 191 (6th Cir. 1993).

With certain exceptions, "every employer is required to make a return for the first calendar quarter in which the employer pays wages, other than wages for agricultural labor, subject to the tax imposed by the Federal Insurance Contributions Act, and is required to make a return for each subsequent calendar quarter (whether or not wages are paid therein) until the employer has filed a final return in accordance with § 31.6011(a)-6." 26 C.F.R. § 31.6011(a)-1(a)(1). "Except as otherwise provided in [inter alia, paragraph (a)(4) of this section], Form 941, 'Employer's QUARTERLY Federal Tax Return,' is the form prescribed for making the return required by this paragraph (a)(1)." *Id.* An almost identical provision governs income tax withheld from wages of employees. 26 C.F.R. § 31.6011-4(a)(1). And both provisions provide an annual filing option to qualifying employers. Under that provision, "[u]pon proper request by the employer, the IRS will notify employers in writing of their qualification for the Employers' Annual Federal Tax Program (Form 944)." 26 C.F.R. §§ 31.6011-1(a)(5)(i) and 31.6011-4(a)(4)(i).

5

To opt out of the Form 944 annual filing program, an employer "must follow the procedures in Revenue Procedure 2009-51." That Revenue Procedure dictates that "[e]mployers who previously received notification of their qualification to file Form 944 must continue to file Form 944 unless the IRS notifies the employer that the employer no longer qualifies to file Form 944 or the employer opts out consistent with the procedures below." Rev. Proc. 2009-51 § 4.02. Employers notified to file 944 "but who want to file Forms 941 instead must call or write the IRS stating that they want to opt out of filing Form 944 before the applicable due date." *Id.* § 4.03. Employers "who were notified of their qualification to file Form 944 but do not receive notification that their filing requirement was changed to Forms 941 must file Form 944 rather than Forms 941." *Id.*

For an employer seeking to opt out of filing Form 944 "for the current tax year must call the IRS on or before April 1st of the current tax year (e.g., April 1, 2010 for returns for tax year 2010)" or submit written correspondence no later than March 15th of the current tax year. *Id.* § 4.04(1). For an employer that "recently received an employer identification number" who wants to opt out of filing Form 944 for the current tax year "must call the IRS on or before the first day of the month that the first required Form 941 for the current tax year is due (e.g., for returns for tax year 2010, call on or before April 1, 2010, July 1, 2010, October 1, 2010, or January 1, 2011)." *Id.* § 4.04(2). Written correspondence making such a request must be "postmarked on or before the 15th day of the month before their firs required Form 941 for the current tax year is due." *Id.* It is undisputed that nobody at Thrive followed these procedures to opt out of filing Form 944 with quarterly Forms 941 for the reporting of Thrive's employment tax liability.

There is a three-year statute of limitations for assessing a TFRP under 26 U.S.C. § 6501(a).

**IV.    Discussion**

6

As Lagerkvist puts it: "The only issue in this case is when the statute of limitations began to run for the assessment of [TRFPs] against Plaintiff." (ECF No. 33 at 2). That said, simple questions often involve complicated answers—especially in the thicket of tax law. In a refund suit, the taxpayer bears the burden of proving that they are entitled to a refund of tax and what amount they should recover. *United States v. Janis*, 428 U.S. 433, 440–41 (1976).

The Government aims to keep it simple. There is no dispute that Thrive was supposed to file a Form 944 rather than Forms 941. For the 2012 tax year, Thrive was required to report its employment tax obligations no later than April 15, 2013. And Thrive never filed a Form 944 in 2012 or 2013. Thus, the Government's position is that the assessment was timely because no event triggered the running of the three-year statute of limitations for the TRFP.

Lagerkvist's version of events clouds that narrative. Her position is that there is a question of fact as to whether Thrive filed Forms 941 for each quarter in 2012 as Thrive provided employee testimony that all filings were handled the same way. And she contends that the Government was placed on notice of Thrive's tax liability when it submitted a Form 941 for the first quarter of the 2012 tax year. Lagerkvist argues that the Form 941 along with other documents should be considered sufficient to meet Thrive's annual filer obligations for 2012. Thus, she posits that the statute of limitations began to run on April 15, 2013, and any TFRP should have been made before April 15, 2016. Because the IRS assessed the TRFP on May 23, 2017, Lagerkvist believes it was untimely.

First, there is no dispute of material fact related to the alleged Forms 941 for the last three quarters of 2012. Lagerkvist cannot prove that she filed them. The Tax Code does not allow testimonial or circumstantial evidence—such as affidavits—to establish filing. 26 C.F.R. § 301.7502. And the only evidence supporting the filing of Forms 941 for the last three quarters of

7

2012 is an affidavit from a Thrive employee. Under these facts, Forms 941 were never filed by Thrive for quarters two, three, and four in 2012.

That said, the IRS's June 2012 letter to Thrive suggests that they may have filed a Form 941 for the first quarter of 2012. Although typically certified or registered mail are considered the exclusive means to prove constructive receipt of a filing, the treasury regulations provide Lagerkvist with a plausible argument that it timely filed its first quarter Form 941:

> (2) Exceptions to actual delivery—(i) Registered and certified mail. In the case of a document (but not a payment) sent by registered or certified mail, proof that the document was properly registered or that a postmarked certified mail sender's receipt was properly issued and that the envelope was properly addressed to the agency, officer, or office constitutes prima facie evidence that the document was delivered to the agency, officer, or office. **Other than direct proof of actual delivery**, proof of proper use of registered or certified mail, and proof of proper use of a duly designated PDS as provided for by paragraph (e)(2)(ii) of this section, are the exclusive means to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed. No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.

26 C.F.R. § 301.7502-1(e)(2) (emphasis added). Said differently, certified and registered mail would be the exclusive means for Lagerkvist to prove delivery in the absence of direct proof. The IRS letter from June 2012 is direct proof of actual delivery: "[w]e **received** a Form 941, Employer's QUARTERLY Federal Tax Return, for the tax period shown above." (ECF No. 1-2) (emphasis added). The acknowledgment of receipt is evidence that Thrive delivered its first quarter Form 941 in 2012 and, at least, is enough to create a question of fact as to the first quarter Form 941's filing.

The question becomes whether this dispute is material. Not only did the IRS acknowledge receipt of a first quarter Form 941, but they expressly rejected it and requested the filing a proper Form 944 instead. (ECF No. 1-2) ("Since you are required to file Form 944…we will not process the Form 941. The Form 944…is due January 31, 2013."). And Thrive never filed a Form 944 in

8

2012 or 2013. Nor did it go through the procedure to change its filing requirements to quarterly Forms 941.

Lagerkvist cites the Fifth Circuit's decision in *Quezada v. IRS* to support its contention that it filed a "return" in 2012 which started the running of the statute of limitations. 982 F.3d 931 (5th Cir. 2020). The *Quezada* court started its analysis with the general rule under 26 U.S.C. § 6501:

> We start with the text. Section 6501(a) sets out a "[g]eneral rule" requiring the IRS to assess a tax "within 3 years after the return was filed[.]" 26 U.S.C. § 6501(a). "[T]he return" means "the return required to be filed by the taxpayer[.]" *Id.* If the taxpayer fails "to file a return," the IRS may assess the tax "at any time." *Id.* § 6501(c)(3).

*Quezada,* 982 F.3d at 935. The issue in *Quezada* was what constitutes a "return" sufficient to trigger the three-year statute of limitations for an assessment. *Id.*

While the IRS argued that only the filing the proper form can constitute a "return," the court disagreed:

> The IRS does not cite any opinion that adopts its reading of *Lane-Wells*, perhaps because none can be found. In fact, the IRS's reading clashes with the readings of several circuits; the Second, Sixth, Ninth, Eleventh, and Federal Circuits have recognized that a form other than the one prescribed by treasury regulations can be "the return." *See Eggertsen*, 800 F.3d at 763; *Springfield v. United States*, 88 F.3d 750, 752 (9th Cir. 1996); *Siben v. Commissioner*, 930 F.2d 1034, 1036 (2d Cir. 1991); *Neptune Mut. Ass'n, Ltd. of Bermuda v. United States,* 862 F.2d 1546, 1555 (Fed. Cir. 1988); *Atl. Land & Imp. Co. v. United States*, 790 F.2d 853, 858 (11th Cir. 1986).
>
> Accordingly, consistent with a plurality of our sister circuits, we think the better reading of *Lane-Wells* is that the taxpayer is not required to file the precise return prescribed by treasury regulations in order to start the limitations clock. Instead, "the return" is filed, and the limitations clock begins to tick, when the taxpayer files a return that contains data sufficient (1) to show that the taxpayer is liable for the tax at issue and (2) to calculate the extent of that liability. *See Lane-Wells*, 321 U.S. at 223; *Germantown Trust Co. v. Comm'r*, 309 U.S. 304, 308-09, 60 S. Ct. 566, 84 L. Ed. 770, 1940-1 C.B. 178 (1940).

9

*Quezada,* 982 F.3d at 935-36. To that end, Lagerkvist believes that Thrive supplied sufficient documentation in 2012— the first quarter Form 941, Form 1120S, and Form W-3—to show Thrive's liability for its employment taxes and calculate the extent of that liability.

To start, although a plurality of circuits follows the *Quezada* reading of *Lane-Wells*, the Seventh Circuit has not addressed that case. Yet the Seventh Circuit has applied—without expressly adopting—the four elements of the so-called *Beard* test. *See In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005) ("A purported return that does not satisfy all four conditions does not play the role that a tax return is intended to play in a system, which is our federal tax system, of self-assessment.") (citing, *inter alia, Beard v. Comm'r*, 82 T.C. 766, 779 (1984)). The *Beard* test is more rigorous and requires that, to be considered a return, a submission must: (1) provide sufficient data to calculate tax liability; (2) be purported to be a return; (3) be an honest a reasonable attempt to satisfy the requirements of tax law; and (4) be executed under the penalty of perjury. *See Beard*, 82 T.C. 766, 777 (1984), *aff'd per curiam* 793 F.2d 139 (6th Cir. 1986). In the Government's brief (ECF No. 30), it posits that Lagerkvist cannot satisfy the *Beard* test. And Lagerkvist never tried to rebut that argument, so she has waived any argument under the *Beard* test.

Even if this court were willing to apply the Fifth Circuit's less rigorous standard from *Quezada,* that case is readily distinguishable. *Quezada* arose from a bankruptcy proceeding in which the IRS filed a proof of claim against a debtor for unpaid "backup withholdings." 982 F.3d at 933. These backup withholding were owed by the debtor for tax years more than three years prior and had not been assessed against the debtor within the three years of applicable filing deadlines. *Id.* The debtor, a stonemason contractor, used subcontractors for projects and was required to file Form 1099s for each subcontractor. *Id.* Under the Tax Code, Quezada was required to pay over the backup withholdings for any subcontractor for whom he did not have a TIN. *Id.*

Thus, for any Form 1099s without a TIN, Quezada was statutorily required to file an additional Form 945 which reported the amount of backup withholdings. *Id.*

Quezada filed Form 1099s for all of its subcontractors, but many lacked the TIN such that Quezada was required to file Forms 945. *Id.* Quezada failed to do so, despite the IRS informing him several times of the deficiency. *Id.* In 2014, the IRS investigated his failure to comply and assessed approximately $1.2 million against him for the amount that he failed to back up from 2005 to 2008. *Id.* The assessment was made more than three years after Quezada filed Forms 1099 and Form 1040 for the 2008 tax year. *Id.*

Put differently, there is no dispute that Quezada was required to file Forms 1099 and he did, in fact, file Forms 1099 for each subcontractor. Because several forms lacked TIN numbers, Quezada was required to file additional Forms 945 but failed to do so. This is different from the present situation. Thrive never filed a Form 944—the form required for the 2012 tax year. More damning, in *Quezada,* the IRS sent the plaintiff a deficiency letter, but that case does not suggest that those letters told him that the IRS was not processing them. Here, the IRS's June 2012 letter expressly stated that Forms 941 would not be processed. (ECF No. 1-2). A ruling for Lagerkvist would essentially allow taxpayers to ignore explicit warnings from the IRS of improper filings that would not satisfy a return-filing requirement. Although sensitive to the complexities of the United States' tax system, that is a bridge too far.

Indeed, *Quezada* did not require the "precise" filing, but Lagerkvist's purported "return" is much more than a stone's throw from the proper filing. *See Quezada,* 982 F.3d at 935-36. This concern becomes even more apparent when reading *Lane-Wells* itself—the case from which the *Quezada* holding was derived. In siding with the IRS, the Supreme Court explained:

> Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the taxpayer to comply. It thus implements

the system of self assessment which is so largely the basis of our American scheme of income taxation. **The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished.**

*Comm'r of IRS v. Lane-Wells Co.,* 321 U.S. 219, 223 (1944) (emphasis added). With this purpose in mind, this Court sincerely doubts that Congress or the Supreme Court would allow Thrive to ignore the IRS's express rejection of Forms 941 in 2012. So too, Thrive should not be allowed to ignore the clear commands of Congress and the IRS Commissioner. The IRS did not hide the ball; it laid everything out in its June 2012 letter—"Since you are required to file Form 944…we will not process the Form 941." (ECF No. 1-2). Thrive simply never picked it up. By not filing a return, Thrive's liability naturally trickled down to Lagerkvist through the TRFP.

Even if *Quezada* applied, the combination of a first quarter Form 941, a Form 1120S, and a Form W-3 does not satisfy the standard.[1] Before reaching the merits, the Court notes that Lagerkvist pleads these facts and raises this issue for the first time in her response (ECF No. 33). Any request to amend her Complaint to plead these facts would be futile. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) ("[C]ourts in their sound discretion may deny a proposed amendment … if the pleading is futile."). Lagerkvist did not raise the issue in her claim for refund, and the Seventh Circuit has consistently held that, under the "variance" doctrine, taxpayers may not raise arguments in their complaints which they failed to raise in their claim for refund. *E.g.*, *Belt Rlwy. Co. of Chicago v. United States,* 567 F.2d 717, 719–20 (7th Cir. 1977*); Continental Ill. Nat'l Bank*

---

[1] In Lagerkvist's response (ECF No. 33), she argues for the first time that other tax filings by Thrive in 2012 satisfy the *Quezada* standard. Yet Lagerkvist never plead any of these facts or raised this issue anywhere in her Complaint (ECF No. 1). Nor did she make this argument in her refund claim to the IRS. (ECF No. 1-3). To the extent that Lagerkvist is attempting to amend the complaint with these arguments, they should be disregarded. *Accord Wilson v. Regal Beloit Am., Inc.,* 521 F. Supp. 3d 760, 764 (S.D. Ind. 2021) (holding that the plaintiff could not amend complaint through summary judgment briefing); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). And to the extent that Lagerkvist would have the Court construe her summary judgment briefing as an amended complaint, it would be rejected because she has not sought leave to amend her initial complaint. *Car Carriers Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984); Fed. R. Civ. P. 15(a)(2).

*& Tr. Co. v. United States,* 67 F.2d 153 (7th Cir. 1933); *See also* 26 U.S.C. § 7422(a). This alone would be enough to end the Court's analysis. Still, in the name of completeness, the Court will address the merits.

To satisfy the *Quezada* standard, the documents must contain data sufficient "(1) to show that the taxpayer is liable for the tax at issue and (2) to calculate the extent of that liability." 982 F.3d at 936. Lagerkvist asserts that the Form 1120S gave notice as to who owed the tax because she was listed as the sole shareholder on Thrive's Schedule K-1. (ECF No. 33 at 7). As for the second prong, she argues that the IRS could have calculated liability based on (1) "total wages paid" on lines 7 and 8 of the Form 1120S (reporting compensation of officers and salaries and wages of non-officers respectively); (2) Form 1120S's reporting of "Payroll Liabilities" for the beginning and end of 2012; (3) the total wages paid and total withholdings reported to the Social Security Administration on Form W-3; and (4) the IRS's knowledge of "the amount of the deposits actually made." (*Id.*). According to Lagerkvist, this combination qualifies as a filed return and started the statute of limitations in April 2013. (*Id.*). But this formulation fails as a matter of law.

Form 1120S does not report withholding or FICA. Without that information, nothing else in the 1120S would be sufficient to calculate the taxpayer's trust fund liability. (ECF No. 36-1). And while Form W-3 does report Thrive's withholdings, the form is submitted to the Social Security Administration ("SSA")—not the IRS. (*Id.*). Beginning in April of the following year, the SSA begins forwarding the information from the Form W-3—with attached Forms W-2—to the IRS throughout the remainder of the tax year. (*Id.*). Lagerkvist fails to show when Thrive's Form W-3 was filed with the SSA. And there is no evidence of when or if Thrive's Form W-3 was received by the IRS. Even if the information in the Form W-3 were sufficient, there is no admissible evidence as to when it was filed. *See Janis*, 428 U.S. at 440–41 (noting that the taxpayer

13

has the burden of proving that they are entitled to a refund). Without this information, the Court can hardly tell when the statute of limitations started running for the TRFP.[2]

In short, Thrive never filed a Form 944 as it was required to do. Nor did Thrive take the appropriate measure to change their required filings to quarterly Forms 941. Thrive ignored the express rejections of Form 941 after attempting to file its first quarter Form 941. And the record is devoid of any evidence that Forms 941 were filed for quarters two, three, or four in 2012. Lagerkvist seeks to side-step the statutory scheme by invoking out-of-circuit precedent on facts and arguments which she pleads for the first time in her response. Even if the Court were to adopt the *Quezada* standard, she has failed to meet her burden to show that Thrive's other filings satisfy that standard.[3] That said, summary judgment for the Government is appropriate.

V.   **Conclusion**

For the reasons set forth above, the Government's Motion for Summary Judgment (ECF No. 28) is GRANTED.

SO ORDERED on February 29, 2024.

 s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[2] It is true that the underlying Forms W-2 attached with the Form W-3 could (once received by the IRS from the SSA) have been added up to determine the total employment tax by extrapolating the employer's share of social security tax from the employees' shares of social security tax withheld from wages, along with the withheld income tax. That is in fact how the IRS often prepares employment tax returns under 26 U.S.C. § 6020(b) when no return is filed by the employer. Essentially, Lagerkvist argues that the mere fact that the IRS can figure out the tax from multiple other sources of information triggers the statute of limitations period. Such a rule would not only undermine the statute, but also impose an unworkable administrative burden on the IRS.

[3] Finally, there is a statement in the motion to enter the stipulations of facts (ECF No.15) that quarterly Forms 941 were in fact filed on May 21, 2014. The evidence cited for that—an admission of a paragraph of the complaint—does not address that fact and the actual stipulations do not repeat this. Even if the Court were to conclude that the Government has stipulated that Forms 941 were filed on May 21, 2014, the TFRP assessment was still timely. Under 26 U.S.C. § 6672(b)(3)(B), the period for assessment was extended until 30 days from the May 17, 2017, denial of Plaintiff's appeal of the IRS's proposed TFRP assessment, making the assessment deadline June 16, 2017. The assessment was made on May 23, 2017, five days after the denial of the appeal and thus within the limitations period. Lagerkvist did not respond to this argument, so she has waived any response.